**CITY OF KANSAS CITY,**
**Missouri, Respondent,**

v.

**Robert E. JOHNSON, Appellant.**

**No. WD 35316.**

Missouri Court of Appeals,
Western District.

Aug. 14, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled
and Denied Oct. 2, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Cecil D. Williams, Kansas City, for appellant.

Richard N. Ward, Jack H. Schrimsher, Edward B. Rucker, Kansas City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

KENNEDY, Presiding Judge.

Defendant was convicted upon trial de novo in the Circuit Court of a charge, originating in the Kansas City Municipal Court, that he "did, by pointing a gun at Doris Jackson, display a dangerous weapon in a rude and threatening manner ..." and was sentenced to 90 days confinement at Municipal Correctional Institution. The trial was to the court without a jury.

## I

■ Appellant's first point is that the associate circuit judge who heard the case upon trial de novo, Honorable Vincent E. Baker, had no jurisdiction to try the case because the case had not been assigned particularly to him by the presiding judge of the circuit in compliance with § 478.225, RSMo 1978. There was in effect at all relevant times an administrative order made by Presiding Judge Donald L. Mason which provides:

Pursuant to Paragraph 2, Section 478.-240, RSMo, all trials de novo/appeals from the Municipal Division comprising the Kansas City Municipal Court, which are presently on file or which may hereafter be filed, shall be assigned to, heard by and disposed of by the Associate Circuit Judges of Divisions 101, 102, 103, 104, 105 and 107, each as an Acting Circuit Judge with no right of trial de novo therefrom.

This order was sufficient to confer upon Judge Baker, the associate circuit judge of Division 104, the authority to hear and try the case. City of Kansas City, Missouri, v. Rule, No. 65681 (Mo. July 17, 1984).

## II

Appellant says the court was without jurisdiction because of a fatal insufficiency of the information. He says that the information did not state an offense in that it omitted to allege that defendant's display or exhibition of the gun was "in the presence of one or more persons". The information was not attacked before judgment. We think it is good after judgment.

The ordinance defining the offense says: "It shall be an offense if any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, ... or shall, *in the presence of one or more persons*, exhibit any such weapons in a rude, angry or threatening manner...." (Emphasis supplied.) *KANSAS CITY, MO., REV.ORDINANCES* ch. 26, art. VIII, § 26.179 (1979).

■ We note that a less strict standard is applied in judging the sufficiency of informations charging violations of municipal ordinances than is applied in judging the sufficiency of informations charging criminal offenses. *Kansas City v. LaRose*, 524 S.W.2d 112, 116 (Mo. banc 1975). Particularly after judgment, we give to the information a liberal construction and give it the benefit of every intendment and implication. *Id.* at 116. *Compare* strictly civil cases such as *Schell v. Keirsey*, 674 S.W.2d 268, 273 (Mo.App.1984); *Paddock Forest Residents Association v. Ladue Service Corporation*, 613 S.W.2d 474, 476 (Mo.App.1981); *Aluma Kraft Manufacturing Company v. Elmer Fox & Company*, 493 S.W.2d 378, 380 (Mo.App.1973). By that standard, we conclude that this information suffices to charge a violation of the ordinance in question. To say that defendant (1) displayed a gun (2) in a rude and threatening manner by (3) pointing the gun at another, implies that it was done in the presence of such other person. Defendant argues that the pointing might have been from a distance, and that one cannot say from the pointing that it was done in the presence of the person. That may be true, but when you say the gun was displayed (which implies there was someone there to see it), and that it was done in a rude and threatening manner (which once again implies the presence of another or others), there is enough in this information to

charge a violation of the ordinance. We hold it to be sufficient to confer jurisdiction upon the court. *Kansas City v. LaRose*, 524 S.W.2d at 116.[1]

■ The defendant further says that the information was fatally deficient in that it did not say that the defendant "did exhibit" (the words of the ordinance), but said that he "did display" the gun. We consider these words to be synonymous, and we disallow defendant's argument.

■ The penalty provided for violation of the above ordinance, under which defendant was charged, provides a special and greater punishment "where the dangerous or deadly weapon involved in such violation is a firearm," *KANSAS CITY, MO.REV.ORDINANCES* ch. 26, art. VIII, § 26.180 (1980). Defendant says that the charge against him did not bring him within said penalty section, because the word "gun" does not necessarily mean a "firearm". A "gun", he says, could be a "gas gun" which is not a firearm, § 571.-010(7), RSMo Cum.Supp.1983. In common understanding, however, a "gun", without any modifying word, is considered to be a firearm and we believe, once again, that after judgment the use of the word "gun" to mean "a firearm" does not deprive the court of the authority to apply the penalty applicable to the use of a "firearm".

### III

Defendant's attorney (not his present appellate counsel) on cross-examination asked Doris Jackson, the state's witness at whom defendant was charged with pointing the gun, whether she had ever been "arrested for falsely accusing (Mr. Johnson) of carrying a weapon". An objection was sustained and the witness was not permitted to answer. She was then asked if she had ever been convicted of giving the police a false report—which we assume was a follow-up to the question about the arrest. An objection to this question, "unless he's

specifically referring to a felony or a misdemeanor conviction", was sustained. Defendant's attorney did not pursue the subject.

These rulings sustaining the City's objections to these two questions are assigned as error.

■ Evidence of the arrest and of the municipal ordinance conviction would not have been admissible on cross-examination for impeachment purposes to affect the witness's *general credibility* under Section 491.050, RSMo 1978, but it was admissible to show her relations with and her bias against *this defendant*, as evidenced by the litigation, which might show a motive for false testimony against this defendant. *See* 98 C.J.S. Witnesses § 546 (1957); *see also State v. Black*, 587 S.W.2d 865, 879 (Mo.App.1979).

The difficulty we face at the appellate level comes from not knowing what the witness's answers would have been. If she had answered "yes" to either question or both, it would have had an impeaching effect. Its exclusion would have been prejudicial.

On the other hand, had her answer been "no" to both questions, the defendant would not have been aided by the answers and would not have been prejudiced by their exclusion. If we reverse on the ground of the erroneous exclusion, and if on retrial the witness answers the questions in the negative, we would have done a useless thing in remanding for retrial.

■ It could be argued with some plausibility that an offer of proof made by the defendant's attorney in the usual way, that is, by a specific statement what he expected the excluded answer to be, would add little or nothing. We already know the answer the attorney was expecting. He was expecting the witness to answer "yes" to one or the other of the questions or to

1. The City's evidence was that defendant pointed the gun at Doris Jackson at close range, in

her immediate presence.

both (unless, of course, he was asking the questions in bad faith, or was "aiming his bow at a venture"—but in that case he could also have made a bad faith offer of proof). It would not help us for him to have announced to the court that he was expecting a "yes" answer. In such a case an offer of proof is sometimes not required,[2] especially on cross-examination. We are much less exacting in requiring an offer of proof on cross-examination, which is sometimes exploratory, than on direct examination. See *Rogers v. St. Avit,* 60 S.W.2d 698, 700 (Mo.App.1933).[3]

In this case, however, where the cross-examination question is so precisely targeted to a particular arrest and to a particular conviction, it would have been entirely feasible for defendant's attorney to make an offer of proof, telling the court the answer he expected and the information upon which he based the question. We would then be in position to evaluate the prejudicial effect of the exclusion.[4]

We have concluded that we should not reverse and remand for trial on the mere possibility that the answers to the questions would have been favorable to defendant. He might have been disappointed in her answers, as he was in the negative answers to the next two questions: "Did you ever shoot at (Mr. Johnson)?" And, "Did you ever try to run over (Mr. Johnson) with an automobile you were driving?"

The judgment is affirmed.

All concur.

**2.** See *Wahl v. Cunningham,* 320 Mo. 57, 6 S.W.2d 576, 587 (Mo. banc 1928); *City of Festus ex rel. Stolzer v. Kausler,* 77 S.W.2d 197, 199 (Mo.App.1934); Mo. Evidence Restated, Sec. 103(a)(2) (MoBar 1984); 4 C.J.S. Appeal and Error § 291 bb (1957).

**3.** It may be laid down as a rule, however, that an offer of proof should always be made, both on direct and cross-examination, of excluded evidence, where it is feasible to do so. *State v. Callahan,* 526 S.W.2d 59, 61 (Mo.App.1975); Mo. Evidence Restated, Sec. 103(a)(2) (MoBar 1984).

**4.** One thing better than any other would have cleared up our dilemma. That would have been an offer of proof from the witness's own mouth as recommended by *State v. Sullivan,* 553 S.W.2d 510, 513 (Mo.App.1977). Such a case as the one before us shows the wisdom of the little used procedure of Supreme Court Rule 73.01 which preserves the excluded evidence for our consideration upon appeal. This useful device was not requested by defendant.